DORSEY PRINTING COMPANY v. GAINESVILLE COTTON SEED OIL MILL AND GIN COMPANY.

Decided March 2, 1901.

**1.—Contract of Sale—Acceptance—Charge.**

In an action to recover a typewriter shipped subject to trial and acceptance, it was error for the court to instruct that if defendant notified plaintiff's authorized agent that the machine was satisfactory before plaintiff revoked its offer to sell, they should find for defendant, where the whole conversation between plaintiff's agent and the defendant, upon which the instruction was predicated, showed that defendant had no intention then of notifying the agent that he accepted the machine, and the only authority shown on the part of the agent was that he was plaintiff's traveling salesman.

**2.—Same—Same—Real Issue Ignored.**

Where the real issue in the case was as to the identity of the machine shipped with one mentioned in plaintiff's prior letter making an offer to sell, a charge that if the jury should find that a certain letter from defendant to plaintiff contained an acceptance, they should return a verdict for defendant, was erroneous in ignoring the question of identity of the machine.

**3.—Same—Evidence Not Too Remote.**

Upon the issue as to whether plaintiff offered at $50 the new machine shipped, or whether that offer and price applied to a different machine, it was competent for plaintiff to give in evidence letters written by it to defendant some eight months prior to the transaction, pricing a second-hand machine for $50 and new machines, of the kind shipped, for $102.

Appeal from the County Court of Cooke.    Tried below before Hon. B. F. Mitchell.

*Hill & Cofer,* for appellant.

*Davis & Garnett,* for appellee.

CONNER, CHIEF JUSTICE.—The appellant, the Dorsey Printing Company, sued appellee, the Gainesville Cotton Seed Oil Mill and Gin Company, in the Justice Court to recover possession of a No. 6 New Century typewriting machine, of the alleged value of $102.50, and of which said printing company asserted title.

Appellee answered by general denial; plead ownership by virtue of a sale of said machine to it, and especially set up the anti-trust law of this State in bar of the suit. The judgment in the Justice Court was in favor of appellee, and on appeal to the County Court the trial before a jury resulted in a like judgment. Hence this appeal.

The facts show that on November 24, 1899, appellant wrote to appellee a letter, the material part of which reads: "If you will permit us, we will ship you an exceptionally good typewriter to examine, and if it suits you, we will sell it to you at $50, payable either cash, or $10 cash and $5 per month." At the head of this letter was an electrotype picture, or facsimile reproduction, of a No. 6 New Century typewriter, and the following printed words: "Dorsey Printing Co. General Dealers for Texas, Indian and Oklahoma Territories in the New Century Caligraph." The words "New Century Caligraph" being in large red type; in that particular differing from the remaining contents.

On November 27, 1899, appellee wrote appellant as follows:

"The Dorsey Printing Co., Dallas, Texas:

"Dear Sirs.—We received your letter of the 24th, and in reply will say that you may ship us one of the New Century typewriters at your own expense, and after we try it thoroughly and are satisfied with it, we will pay you for it, and if it don't suit, will ship it back at your expense.

"If this arrangement suits you, send the machine at once.

"GAINESVILLE COTTON SEED OIL MILL AND GIN CO.,
"E. P. Bomar, Mngr.    E."

On November 30, 1899, upon paper with letterhead as before described, appellant wrote appellee the following letter, to wit:

"Gainesville Cotton Seed Oil and Gin Co., Gainesville, Texas:

"Gentlemen.—We have your esteemed request of the 27th inst., and will forward to you as quickly as we can one of the No. 6 New Century Caligraphs by prepaid express, because we are satisfied that a fair trial of this machine will convince you it is precisely what you want.

"Thanking you for your favor, we beg to remain, very truly yours,
"DORSEY PRINTING COMPANY.    J. W. H."

Appellant thereupon shipped to appellee the typewriter involved in this suit, but did not transmit the shipping bill containing the price therefor, $102.50, or otherwise notify appellee of the price to be charged.

December 15, 1899, A. M. Hoyle, a traveling salesman for appellant company, whose authority was not otherwise shown, was in the city of Gainesville, and having heard that appellee had purchased a New Century typewriter No. 6 for $50, the regular price of which was $102.50, went to the office of appellee to inquire about it. He there met Mr. Bomar, appellee's president and manager, and Mr. Easley, the stenographer. There is some difference in the testimony as to the conversation that then took place. Bomar testified that in the beginning, and before he knew for whom Hoyle was acting, he stated to the latter that he did not desire to purchase a typewriter; that he was satisfied with the one shipped him for trial, and would keep it. All parties agree, however, that Hoyle then insisted, in effect, that the machine in controversy could not be sold for $50, and was not the machine offered therefor in said letter of November 24, 1899. Bomar declined to act with Hoyle, but in about an hour after this meeting wrote appellant, declaring his satisfaction with said machine and his acceptance thereof, inclosing his check for $50 in payment as per terms of letter of November 24, 1899. Appellant immediately denied having offered the New Century for $50, and declined to accept said check, which was tendered in return through Mr. Hoyle, and demand made for return and possession of the typewriter, which being refused, appellant instituted this suit as stated.

We are of opinion that there was error as assigned in the third paragraph of the court's charge. The jury were here authorized to find for appellee, if they found that the machine was shipped to appellee on trial, and it proved satisfactory, and appellee, "thereafter notified either plaintiff or an authorized agent of plaintiff that said typewriter was satisfactory before plaintiff revoked its offer." This was evidently intended to apply to the evidence of Bomar, that in the beginning of the Hoyle conversation above mentioned he informed said Hoyle that the machine was satisfactory, and the jury may and very probably did construe this as an acceptance that fixed the right of appellee to the machine in controversy. Such construction, in our judgment, would constitute a perversion of the true purport of the conversation. If Bomar, appellee's manager, made the statement relied upon first as stated by him, it was but part of a general conversation that should be construed as a whole, and was evidently not intended by him as an acceptance of an offer of sale then unclosed. He would hardly thus attempt to formally complete a proposition of sale on the part of appellant with one wholly unknown to him, and not known to have connection with appellant. Hoyle was there vigorously asserting, in effect, that appellant had made no such offer as insisted upon by Bomar, that the offer made in the letter of November 24, 1899, related to a second-hand typewriter, and not to a New Century No. 6, and the words attributed to Bomar in the same imme-

diate connection ought not be be given the effect of such acceptance as was necessary to fix appellee's title to the machine in controversy. In addition to which, authority to accept or reject in Hoyle was not shown. He was shown to be a mere traveling salesman, and the court instructed the jury that if they so found, Hoyle would not have power to revoke; thus rendering it possible for the jury to find that by reason of Hoyle's want of authority appellant's offer was not withdrawn by him in the conversation with Bomar on December 15, 1899, but that nevertheless Hoyle had such authority as would make effective the asserted acceptance in this conversation.

We think this paragraph of the court's charge subject also to further objection. The jury were therein instructed, in substance, that if they found that Hoyle was without authority to revoke the offer of appellant, that appellee's letter of December 15, 1899, constituted final acceptance of the machine in controversy, and that in such case they should find for appellee. The issue of the identity of the subject matter of appellant's offer was thus evidently excluded. Ordinarily it is the duty of the court to construe and declare the legal effect of writings relied upon as constituting a contract. Here the letter of November 24, 1899, read in the light of all the circumstances, was somewhat ambiguous. Appellant was insisting that the machine therein really offered for $50 was not the one in controversy. Appellee insisted to the contrary, and this was the vital issue in the case, and should not have been excluded in this clause of said section of the charge. If the letter of November 24, 1899, was written with the design that appellee should understand therefrom that a New Century No. 6 was offered for $50, or if a person of ordinary care and prudence would have so understood it, and appellee did in fact so understand it, and without knowledge of mistake, if any, and before withdrawal of the offer, accepted the proposition, then appellant can not plead that the offer was intended in fact to refer to another machine. If, on the contrary, the offer related to and was intended to be of some other typewriter, and would have been so understood by the exercise of reasonable care and prudence, there was no sale; for it is unquestionably true in the law of contracts, including sales, that the minds of the parties must meet upon the same thing at the same time. Benj. on Sales, sec. 418; Tied. on Sales, sec. 33. Or if, under the circumstances, a person of ordinary care and prudence would have understood the offer to be of a New Century No. 6, and appellee in fact so understood it, yet if in fact it was not so intended by appellant, and if appellee, at any time and by any means prior to due acceptance of it, had notice that the machine in controversy was not the one intended by the offer of November 24, 1899, then no sale took place. Dunn v. Price, 87 Texas, 321.

What we have here said also illustrates the relevancy and importance of certain other correspondence between the parties, and to the exclusion of which appellant assigns error. The first was a letter from appellee to appellant, dated March 12, 1899, inquiring for price, etc., of typewriter.

On the 13th, appellant answered, quoting prices and terms of second hand machines at $35 and $50, and calling attention to a folder accompanying letter with picture of New Century No. 6 engrossed thereon, giving the price thereof as $102.50. It is insisted that these letters were too remote in point of time, and unconnected with the offer under consideration. This but goes to the weight of the testimony, not to its admissibility. A vital issue was, did appellee in fact understand the offer in controversy to be of a New Century No. 6 for $50? In the determination of this issue it was certainly relevant to show, if appellant could do so, that appellee had theretofore received knowledge of the selling price of a New Century, and of second-hand machines. It was for the jury to say whether such knowledge had been received through any authorized agent, and whether such knowledge existed at the time in question.

Under the real issues involved it is difficult to see what legitimate place in the pleading the anti-trust law had. The suit was for the recovery of specific property, and not for the enforcement of a contract in violation of any of the provisions of that law. However, the value of the typewriter in question was involved, and we will not undertake to say that the court should reject competent evidence, if such existed, of the existence of an agreement or combination by reason of which the market price was fictitious, and not the real market value.

For the errors noted the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*