Milton KAINER et al., Petitioners,

v.

James W. WALKER, Respondent.

No. A–9605.

Supreme Court of Texas.

Feb. 12, 1964.

Rehearing Denied April 15, 1964.

Bryan & Patton and Julietta Jarvis, Houston, for petitioners.

Hill, Brown, Kronzer, Abraham, Watkins & Steely, Houston, for respondent.

WALKER, Justice.

This suit was brought by James W. Walker, respondent, to recover for damages alleged to have been sustained in an intersectional collision between the automobile he was driving and a truck owned by Milton Kainer and driven by the latter's employee, Robert Miles. Kainer and Miles were defendants in the trial court and are petitioners here. The trial court rendered judgment for respondent on the jury verdict, and the Court of Civil Appeals affirmed. 366 S.W.2d 249.

Negligence on the part of Miles was alleged by respondent only in general terms, and petitioners did not except to the pleading. Although the evidence will support findings that Miles was negligent in a number of different respects, no specific primary negligence issues were submitted to the jury. The judgment in respondent's favor is based on the jury's findings in response to Special Issues Nos. 1 and 2: (1) that Miles "failed to exercise that degree of care which would have been exercised by a reasonably prudent person in the exercise of ordinary care under the same or similar circumstances," and (2) that such failure was a proximate cause of the collision. Petitioners objected to each of these issues on the ground that the same were multifarious and duplicitous and an improper blanket submission of the issues of negligence claimed by respondent.

It has often been held that both primary and contributory negligence should be submitted to the jury by means of special issues relating to specific acts or omissions raised by the pleadings and evidence. See Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517; Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99; Blythe County Line Ind. Sch. Dist. v. Garrett, Tex. Civ.App., 232 S.W.2d 248 (no writ). These and a number of other cases cited by the parties are not necessarily controlling here, because in each of them the pleading was specific or a general plea was attacked by special exception or specific issues were submitted.

In Texas & N. O. R. Co. v. Hayes, 156 Tex. 148, 293 S.W.2d 484, no exception was taken to a general plea of contributory negligence. A specific contributory negligence issue was submitted without objection, and a general submission requested by the defendant was refused. It was held that the defendant was not entitled to a general submission because the only issue of contributory negligence raised by the evidence had been submitted specially. Respondent says that the reasoning of the Court in that case leads to the further conclusion that the defendant would have been entitled to a general submission if more than one specific issue had been raised by the evidence. He argues and the Court of Civil Appeals held that if either party pleads primary or contributory negligence generally and the

pleading is not attacked by special exception, such party has the right to have the case submitted to the jury in that form. We do not agree.

There is another case in which contributory negligence was alleged in general terms and the plaintiff did not except to the pleading. Contributory negligence was then submitted generally; the defendant made no objection to the general submission but did request a cluster of specific issues dealing with the alleged failure of the plaintiff to sound the horn of his automobile. It was held that the trial court erred in refusing to give the requested specific issues. Agnew v. Coleman County Electric Cooperative, 153 Tex. 587, 272 S.W.2d 877. See also Southern Iron & Machine Co. v. Portugal, Tex.Civ.App., 53 S.W.2d 685.

■ When a person who has alleged negligence in only general terms may thus demand a specific submission, we are at a loss to understand why the adverse party should have any different treatment. Under the provisions of Rule 277, Texas Rules of Civil Procedure, either party has the right to insist that specific issues raised by the pleadings and evidence be submitted distinctly and separately. It is well settled, moreover, that a general plea of either primary or contributory negligence, when not excepted to, is sufficient to warrant submission of the issue either generally or in such groups of specific issues as may be raised by the evidence. See Schumacher Co. v. Shooter, 132 Tex. 560, 124 S.W.2d 857; Texas & N. O. R. Co. v. Hayes, supra; Agnew v. Coleman County Electric Cooperative, supra; Coleman v. Texas & Pac. Ry. Co., Tex.Civ.App., 241 S.W.2d 308 (wr. ref.). This refers to the sufficiency of the pleading as such to support either form of submission, and does not mean that anyone who goes to trial on an unattacked general plea of negligence is entitled to have the issues submitted generally or specially as he may choose.

■ The usual reason for excepting to general pleadings is to obtain further information about and narrow the claims or defenses asserted by the adverse party. One who does not need such information to prepare for trial will probably permit the pleading to go unchallenged, and in our opinion there is no sound reason for saying that he thereby loses the right to have each controverted and ultimate issue of fact considered and determined separately by the jury. It would be rather strange to require a party to take, the court to pass upon, and the opposite party to meet a special exception which serves no purpose whatsoever except to lay a predicate for a procedural right that can and should be asserted later in the trial. We hold that petitioners were entitled to a specific submission of the negligence issues raised by the evidence, and that they could reach the matter by making a proper objection to Special Issues Nos. 1 and 2.

■ Respondent contends that the objections made by petitioners were too general. He recognizes that ultimately it would be necessary for him to prepare and tender the issues in proper form, but says that where the pleadings are general the objecting party must, as part of his objection to a global submission, point out the issues raised by the evidence. It seems to us that here again an undue burden would be placed on anyone in petitioners' position by the generality of an adversary's pleading. The objections made by petitioners were sufficient to direct the attention of the trial court to their contention that Special Issues Nos. 1 and 2 constituted an improper global submission of a number of specific issues which respondent claimed were raised by the evidence. That is all they were required to do. Rule 274, Texas Rules of Civil Procedure. To the extent that Owens v. L. J. Miles Construction Co., Tex. Civ.App., 336 S.W.2d 189 (no writ), and Texas & Pac. Ry. Co. v. Porter, Tex.Civ. App., 360 S.W.2d 568 (wr. ref. n. r. e.), are inconsistent with the conclusions here expressed, such decisions are regarded as unsound and will not be followed.

There is no merit in petitioners' contention that the verdict will not support a judgment in respondent's favor without a finding of some act or omission to which the general finding of negligence might be related. The erroneous global submission of the primary negligence issues simply requires that the cause be remanded for a new trial. Point No. 7 in the application for writ of error presents questions that are not likely to arise again. Point No. 9 seemingly raises a "no evidence" question, but when considered in the light of the argument thereunder is really a problem of excessiveness and not within our jurisdiction. This brings us to two questions brought forward for review and on which the district judge will probably be required to rule at the next trial.

One of these questions has to do with evidence of an experiment conducted by the investigating officer. The accident occurred at the intersection of Capitol Avenue and Wayside Drive. Respondent was driving west on Capitol Avenue. According to his testimony, he waited at the intersection until the traffic light changed to green. In the meantime Miles was driving the Kainer truck west on Harrisburg, which runs parallel to and one block north of Capitol Avenue. Upon finding the traffic light green as he approached the intersection of Harrisburg and Wayside, he turned to his left and drove south on Wayside at about 15 miles per hour. He testified that as he approached and entered the intersection of Wayside and Capitol Avenue, the traffic light there was green for north-south traffic. The testimony of the two drivers was thus in direct conflict as to which had the green light.

The accident was investigated by Officer W. K. Ford of the Houston Police Department. With respondent and Miles in the police car, Ford retraced the route followed by the Kainer truck just prior to the collision. On the basis of this and other similar experiments that were conducted later, Ford testified that anyone who made a left turn on a green light from Harrisburg on to Wayside could not, by driving within the speed limit, reach the intersection of Capitol and Wayside while the traffic light there was green for north-south traffic. Petitioners say that this testimony should not have been admitted because there is nothing in the record to show the timing of the two lights or that the same were in any way synchronized with each other.

Respondent insists that petitioners did not object to the evidence of Ford's experiments and conclusions on the ground now urged by them, that it can be inferred from Ford's testimony that there was some established relationship between the two traffic signals, and that the alleged error was harmless in any event. We do not attempt to pass on any of these matters at this time, but it is our opinion that the testimony in question should be excluded in the absence of evidence regarding the timing or synchronization of the phases of the two lights from which it can fairly be said that Ford's experiments were conducted under conditions substantially similar to those existing at the time of the accident. See Fort Worth & Denver Ry. Co. v. Williams, Tex., 375 S.W.2d 279.

Respondent had an arrested case of tuberculosis, and at the time of the trial was receiving disability payments from the Veterans Administration at the rate of $61.00 per month. The trial court sustained respondent's motion in limine to require petitioners to approach the bench out of the hearing and presence of the jury and obtain a ruling from the court before making any reference to the fact or the amount of such payments. In the course of the trial but while the jury was absent from the court room, petitioners were allowed to and did interrogate respondent regarding the disability payments to complete their bill of exceptions. They then offered such testimony generally and in the alternative for purpose of impeachment, and also sought to show the fact that respondent was receiving such compensation without disclosing the amount he was paid. The evidence was excluded.

■ Respondent testified in the presence of the jury as to his physical condition and previous treatment by the Veterans Administration, and petitioners were permitted to interrogate him fully regarding these matters. He did not deny having an arrested case of tuberculosis, and of course was not even asked about the disability payments in the presence of the jury. The excluded evidence thus has no bearing on his credibility except to the extent that it is inconsistent with his testimony that he was in good physical condition prior to the collision. There has been no claim that he received a chest injury in the accident or that his arrested tuberculosis condition was aggravated by the occurrence. He had not been examined by the Veterans Administration, and had not been requested to submit himself for examination, in over twenty years. During most of that period he was employed by and doing heavy work for Reed Roller Bit Company, where he was working at the time of the accident. In these circumstances neither the fact nor the amount of respondent's disability payments would have been of any real assistance to the jury in determining his physical condition prior to the accident or the extent and consequence of the injuries he received in the collision. The excluded testimony was not admissible either generally or for the purpose of impeachment.

■ Respondent contended that he was forced to retire because of the injuries received in the accident. Petitioners now say that the excluded testimony was relevant and admissible on the issue of whether respondent would have chosen to retire even if he had not been injured. It was not offered for that purpose in the trial court, and evidence of payments from collateral sources certainly cannot be admitted on any such theory unless the tender is properly limited and the jury is instructed accordingly. We are not prepared to say that evidence of that nature can never be received, but it should be excluded unless clearly relevant and with substantial probative value on some disputed issue in the

case. See Eichel v. New York Central R. Co., 2nd Cir., 319 F.2d 12; Page v. St. Louis Southwestern Ry. Co., 5th Cir., 312 F.2d 84; Simmons v. Union Terminal Co., 5th Cir., 290 F.2d 453; A. H. Bull Steamship Co. v. Ligon, 5th Cir., 285 F.2d 936, 88 A.L.R.2d 479. Here the evidence shows that respondent was earning approximately $7,000.00 per year, and the fact that he was entitled to a pension of $61.00 a month has very little bearing on the issue of whether he would have decided to retire if he had not been injured. On the present record we think it would have been an abuse of discretion for the trial court to admit the excluded evidence for that limited purpose.

The judgments of the courts below are reversed, and the cause is remanded to the district court for a new trial.

## ON MOTION FOR REHEARING

■ In his motion for rehearing, respondent insists that much havoc will be wrought by this decision. He thinks it will be construed as holding that a general objection is always a sufficient predicate for a point of error attacking a special issue on the ground of generality or multifariousness. It was not our intention to paint with so broad a brush. We do say that when, in an ordinary negligence case such as this, the court prepares to submit an issue which merely inquires, in so many words, whether one of the parties failed to exercise ordinary care, the error may be preserved at that stage of the proceeding by an objection that the issue constitutes an improper global submission.

Respondent also points out that Eichel v. New York Central R. Co., 2nd Cir., 319 F. 2d 12, which was cited in our original opinion, has been reversed. The Supreme Court of the United States held that evidence of disability pension payments under the Railroad Retirement Act of 1937 should not be admitted in an action under the Federal Employers' Liability Act for the purpose of showing that the plaintiff had a motive for

not continuing to work, and stated that the likelihood of misuse by the jury clearly outweighs the value of such evidence. Eichel v. New York Central Railroad Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307. This provides additional support for our conclusion that the trial court would have erred if evidence of disability payments had been admitted in the present case.

The motion for rehearing is overruled.