**NORTH SIDE STATE BANK, Appellant,**

v.

**Mrs. Jennie HUNTER, a feme sole, Appellee.**

**No. 326.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Feb. 18, 1970.

Rehearing Denied March 18, 1970.

Daryl Bristow, Baker, Botts, Shepherd & Coates, Houston, for appellant.

Frank Stovall, David Burrow, Helm, Jones & Pletcher, Houston, for appellee.

TUNKS, Chief Justice.

This is a personal injury case growing out of alleged wrongs committed in taking possession of a mortgaged automobile.

The appellee, Jennie Hunter, was the owner and mortgagor of the car involved. The appellant, North Side State Bank, was the holder of a monthly installment note which was secured by the mortgage on the car. The mortgage contract gave the mortgagee the right to enter the owner's premises and to take possession of the car in

the event of a default by the mortgagor. The appellee had on several occasions got behind on her payments but arrangements had been made to permit her to pay up. On June 2, 1964 the appellee was again delinquent. On that date Mr. E. F. Reid, an employee of the bank whose duties included the processing of delinquent accounts, contacted a firm called B. C. Snow Adjusters and asked that they furnish two men to go with him the next day either to collect the money due on the note or to take possession of the car. B. C. Snow Adjusters in turn contacted Bank and Finance Adjusters, Inc. and asked that firm to furnish the two men requested by Reid. Pursuant to that arrangement on the morning of June 3, 1964, Reid, driving his car, picked up two men named Follis and Eskew, whom he took with him to the appellee's home.

When Reid arrived at the appellee's home he parked his car in the street and went alone to the door of her house. Appellee came to her door and Reid told her that he had come either to collect the money due on the note or to take the car. Appellee told Reid that she had made arrangements with an officer of the bank to take care of the delinquency and that he could not take the car. The appellee then tried to call the bank officer by telephone but got no answer.

After appellee had refused to pay the money due on the note Reid went back to his car and told the two men with him to take possession of the car. It does not appear whether Reid had asked appellee for the keys of the car, but it does appear that he did not have them. The car was sitting in appellee's yard in the driveway and the keys were not in it. Follis raised the hood of the car and adjusted the wiring in an effort to start the motor. Eskew sat in the driver's seat of the car. Appellee was in her house dressing to get ready to go to work when she heard the men trying to start the car. She tried to call to them to order them off but could not make them hear. She then got a gun, either a rifle or a shotgun, and went out to drive the men away. She did not know whether the gun was loaded and did not know how to shoot it anyway, so she used it as a club. There is conflicting testimony as to what happened next. According to the testimony of the appellee the men attacked and beat her. According to the testimony of the men they withdrew as quickly as possible, using only such force as was necessary to defend themselves. It is uncontroverted, though, that a fracas of some considerable proportions occurred in which fracas the appellee sustained the personal injuries which are the basis of this case.

Mrs. Hunter filed suit to recover from the North Side State Bank, Reid, Follis and Eskew damages for the personal injuries sustained by her on the occasion in question. Subsequently, a non-suit was taken as to Reid, Follis and Eskew. A trial to a jury resulted in a verdict on which the trial court rendered judgment for Mrs. Hunter against the bank in the amount of $4,705. The bank has duly perfected appeal and preserved points for review.

The allegations in the plaintiff's trial pleading as to the factual basis for liability are in the following language:

"Your plaintiff would show that on or about the 3rd day of June, A.D. 1964, she was seriously injured as a result of the negligence of the defendants, jointly and severally, or by the willful and intentional assault of the defendants, jointly and severally, at her place of residence at 942 Conklin Street in Houston, Harris County, Texas. * * *"

These allegations are followed by allegations that the individual defendants were acting in the scope of their employment for the bank, a general description of the nature of the injuries sustained and the damages resulting therefrom, and a prayer for damages. There are no allegations as to specific acts or omissions of the defendants which constituted negligence and a proximate cause of the injuries nor any

other description of the conduct of the defendant that was alleged to give rise to the cause of action. There were no exceptions to this pleading.

The defendant's answer consisted of a general denial and a general plea of contributory negligence.

It is to be noted that plaintiff's petition alleged two separate causes of action, one for negligence and the other for the intentional tort, assault. (There was no allegation of a battery). The plaintiff, however, apparently elected to submit the case to the jury on the negligence theory alone. Special Issue No. 1 submitted by the plaintiff was:

"Do you find from a preponderance of the evidence that the defendant, North Side State Bank's employee, E. F. Reid, failed to act peaceably in attempting to take the automobile in question?

"Answer 'We do' or 'We do not'."

Special Issues 2 and 3, submitted on condition of affirmative answer to Special Issue No. 1, inquired as to whether such failure to act peaceably was negligence and whether such negligence was a proximate cause of plaintiff's injuries. All were answered affirmatively.

Special Issue No. 4 asked whether Follis and Eskew, on the occasion in question, were acting as agents of North Side State Bank and was answered in the affirmative.

Special Issue No. 5 was in the following language:

"Do you find from a preponderance of the evidence that such agents, if you have so found, employed the use of force in attempting to take the automobile in question?

"Answer: 'We do' or 'We do not'."

It was answered "We do."

In response to Special Issues Nos. 6 and 7 the jury found that such "employment of force" was negligence and that negligence was a proximate cause of plaintiff's injury.

Certain defensive issues, including issues as to contributory negligence, which issues are not relevant to this appeal, were submitted and were answered favorably to the plaintiff.

■ The appellant contends that the trial court erred in overruling its motion for instructed verdict and its motion for judgment non obstante veredicto upon the ground that there was no evidence of any negligence on the part of the defendant's agents. Those contentions are overruled. There were acts and omissions on the part of those agents which the jury could have found to constitute negligence. The fact that there was also evidence of an assault, which was pleaded, and a battery, which was not pleaded, does not preclude the possibility of negligence being shown. An act which is not an assault only because the actor does not intend to cause harmful contact or the apprehension thereof may, nevertheless, constitute negligence. Restatement of the Law of Torts, 2d, Sec. 21(b).

■ We do hold, however, that the trial court committed reversible error in submitting the negligence issues in the form in which they were submitted. They clearly constituted a global submission of the negligence cause of action. They did not inquire as to any specific act or omission on the part of the defendant's agents. The appellant objected to them on this ground. Even though the plaintiff's general allegation of negligence was not objected to the defendant was entitled to have the alleged cause of action submitted by special issues inquiring as to specific acts or omissions. Appellant's objection to the charge preserved the error of the trial court in not doing so. Kainer v. Walker (Tex.Sup.Ct.), 377 S.W.2d 613. For this error the case must be reversed and remanded to the trial court for another trial.

Reversed and remanded.